UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

JHON DARWIN LEON HERAS,

                    Petitioner,          **MEMORANDUM & ORDER**
                                         1:23-cv-05057 (EK)

          -against-

WARDEN, METROPOLITAN DETENTION
CENTER, BROOKLYN

                    Respondent.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

## I.   Introduction

          Jhon Darwin Leon Heras ("Petitioner" or "Leon")
petitions this Court for a writ of habeas corpus pursuant to
28 U.S.C. § 2241.  Leon seeks relief from a certificate of
extraditability issued by Magistrate Judge Taryn Merkl on June
27, 2023.  Leon's petition marshals two possible grounds for
habeas relief.  First, he contends that Judge Merkl erred in
concluding that there was sufficient evidence to establish
probable cause to find him guilty of murder under Ecuadorian
law.  Second, Leon asserts that the violent and unstable
conditions of Ecuadorian prisons warrant an exception to the
non-inquiry doctrine such that his extradition should not be
certified.  Alternatively, Leon requests that a "judicial

caution" be issued to the Secretary of State regarding these prison conditions.

For the reasons set forth below, the petition is denied.

## II.  Procedural History

The United States government asks that Leon be detained and extradited for the offense of murder, under its treaty with the Republic of Ecuador.  *See* Compl., *United States v. Leon Heras*, No. 22-MJ-271 (E.D.N.Y., Mar. 9, 2022), ECF. No 1 ("Compl.").  The complaint in support of extradition alleges that in October 2014, Leon attended a late-night party with Cristian Marcelo Sarmiento Heras ("Sarmiento Heras"), Juan Carlos Heras Cedeño ("Heras Cedeño"), and Jorge Havier Urgilés Paredes ("Urgilés Paredes").  *Id.* ¶ 6(a).  After the party, the men allegedly returned to Heras Cedeño's home to continue drinking, and around 1 a.m., a fight broke out, leading Leon and Sarmiento Heras to kill Heras Cedeño and Urgilés Paredes.  *Id.*

Following these alleged events, on October 15, 2014, an Ecuadorian judge issued a warrant for Leon's arrest for murder under Article 140, subsections 4, 6, and 7, of Ecuador's Comprehensive Organic Penal Code.  *Id.* ¶¶ 4, 5.  The Ecuadorian government, in turn, submitted a formal extradition request to the United States for Leon in June 2015.  *See* Lindsay Decl., *United States v. Leon Heras*, No. 22-MJ-271 ¶ 3 (E.D.N.Y. Jan.

2

27, 2022), ECF. No. 1-1.  In response, a warrant issued for Leon's arrest, and he was arrested on March 9, 2022 in Queens, New York.  Compl. ¶ 7.  Leon has since been in custody in this District.

Before certifying Leon's extradition, Judge Merkl held an extradition hearing, at which both the government and Leon presented oral arguments, written testimony from witnesses, and other exhibits.  Tr. Of Extradition Hr'g, *United States v. Leon Heras*, No. 22-MJ-271 (E.D.N.Y. Feb. 1, 2023), ECF. No. 25. Judge Merkl then asked for supplemental briefing on multiple subjects.  Mem. & Order, *United States v. Leon Heras*, No. 22-MJ-271 at 4 (E.D.N.Y. Jun. 27, 2023), ECF. No. 33 ("Mem. & Order"). Despite the parties' disagreement regarding whether particularized findings were necessary for each element of the charge proffered by Ecuador, *id.* at 4, Judge Merkl made probable cause determinations for each subsection of the murder charge and for each victim independently, *id.* at 13.  Ultimately, Judge Merkl certified Leon's extradition. *Id.* at 1.  It is from this certification that Leon now seeks habeas relief.

### III. Legal Standard

Extradition orders cannot be appealed directly in federal court; they "may only be reviewed by a petition for a writ of habeas corpus under 28 U.S.C. § 2241."  *Bisram v. United*

*States*, 777 F. App'x 563, 565 (2d Cir. 2019).[1]  In this collateral review, a district court may only "inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was a reasonable ground to believe the accused guilty."  *Skaftouros v. United States*, 667 F.3d 144, 157 (2d Cir. 2011).  In an extradition certification proceeding, the standard of proof for this "reasonable ground" is probable cause.  *Shapiro v. Ferrandina*, 355 F. Supp. 563, 571-72 (S.D.N.Y. 1973), *aff'd as modified*, 478 F.2d 894 (2d Cir. 1973).

On habeas review, however, the inquiry is narrower. While it is not a rubber stamp, the district court's "any evidence" standard is deferential to the magistrate judge's ruling.  *See Bisram*, 777 F. App'x at 567.  Indeed, district courts "are not at liberty to second guess the determination of the magistrate judge to issue an order certifying a request for extradition" because "habeas corpus is not a writ of error, and it is not a means of rehearing what the . . . magistrate already has decided."  *Sacirbey v. Guccione*, 589 F.3d 52, 63 (2d Cir. 2009).  The petitioner, moreover, bears the burden of proving by

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

a preponderance of the evidence that the requirements of the extradition treaty were not met.  *Skaftouros*, 667 F.3d at 158.

## IV.  Discussion

### A.  Review of the Certification

#### 1.  Jurisdiction and Offense Charged

With respect to the first two questions in this Court's review, there is no dispute.  First, Leon concedes that Judge Merkl had jurisdiction to certify his extradition. Pet'r's Br. 1, ECF No. 6.  *See also* 18 U.S.C. § 3184; *Austin v. Healey*, 5 F.3d 598, 602-03 (2d Cir. 1993)(holding that magistrate judges have jurisdiction over extradition certifications).  Second, the parties agree that the United States and Ecuador have a valid extradition treaty, and that the charged offense – murder – is extraditable under it. [2] *See* Pet'r's Br. 1.

#### 2.  Sufficiency of the Evidence

Leon does, however, challenge Judge Merkl's finding of probable cause, based on the evidence presented in the extradition request and at the hearing.  *Id.*  The extradition request for Leon is premised on his alleged commission of murder under Article 140 of the Ecuadorian penal law, subsections 4, 6, and 7, which punishes "[t]he person who kills another" under any

---

[2] *See* Extradition Treaty Between the United States of America and the Republic of Ecuador, U.S.-Ecuador, June 28, 1872, 18 Stat. 756, art. II, ¶ 1; Supplementary Extradition Treaty Between the United States of America and the Republic of Ecuador, U.S.-Ecuador, Sept. 22, 1939, 55 Stat. 1196.

one of a list of exacerbating circumstances. Extradition Req., *United States v. Leon Heras*, No. 22-MJ-271 at 66 (E.D.N.Y. Mar. 9, 2022), ECF. No. 1-2 ("Extradition Request").

      a.   Probable Cause to Establish Killing

      First, Leon argues that the evidence did not establish probable cause to find that he killed either Urgiles Paredes or Heras Cedeño. Pet'r's Br. at 16-19.  In assessing probable cause under a "totality of the circumstances" standard, Judge Merkl considered several written witness statements, autopsy reports, and crime scene evidence.  Mem. & Order at 20 (citing *United States v. Howard*, 489 F.3d 484, 491 (2d Cir. 2007)).  In particular, Judge Merkl reviewed the testimony of Claudio Bolívar Rivera Heras, Cristian Jhonnathan Ochoa Heras, Erika Rocío Ochoa Heras, and Luis Rigoberto Correa Garcia, each of whom was present near the site of the killings on the night and early morning that they occurred.  *Id.* at 14-19.  Together, the testimony of these witnesses placed Leon in Heras Cedeño's home with Sarmiento Heras, Heras Cedeño, and Urgilés Paredes around 1 a.m., just before the killings.  *Id.*  Additionally, the testimony stated, among other things, that Leon was kicking the façade of the building, engaged in a loud fight with the other three men that included exclamations about killing, and instructed Sarmiento Heras to bring a machete, before the four men left the home together.  *Id.*  Judge Merkl also analyzed

evidence suggesting that Urgilés Paredes returned to the populated area, asking for help because Heras Cedeño had been attacked and seriously wounded, and that Sarmiento Heras had previously threatened Heras Cedeño that he and Leon would exact revenge for a prior fight. *Id.* Taken together with evidence recovered from the crime scene and autopsies, discussed below, this evidence supported Judge Merkl's finding of probable cause that Leon participated in both killings.

        b.  Probable Cause Under Each Theory of Murder

Second, Leon argues that, even if the evidence did establish probable cause that he committed the killings, the evidence supports only the non-extraditable offense of homicide, not murder (as charged in the extradition request). Pet'r's Br. 11-16.  This argument does not succeed in this posture.

First, subdivision 4 of Ecuador's Article 140, requires that the killing involve a "[s]earch for that purpose the night or unpopulated sites." Extradition Request at 66. Judge Merkl found probable cause to establish this element based on crime scene evidence showing that the victims' bodies were found in an uninhabited field of cropland with no street lighting, at a distance from any residence, having been killed over night. Mem. & Order at 20-21.

Second, subdivision 6 covers killings that "[i]ntentional[ly] or inhumanely increase the victim's pain."

7

Extradition Request at 66.  Judge Merkl found this requirement satisfied based on the extreme violence of the killings.  Mem. & Order at 22-24.  In particular, she reviewed evidence from the medical examiner, autopsy reports, and crime scene reports that describe a variety of wounds and disfiguration to both victims, made by multiple weapon types.  *Id.*  This, Judge Merkl concluded, was indicative of sufficient pain and suffering to support subdivision 6 in the killing of both victims.  *Id.*

Finally, Article 140, subdivision 7 involves killings committed to "[p]repare, facilitate, consummate or conceal another offense."  Extradition Request at 66.  Judge Merkl found probable cause to establish this provision only as to the killing of Urgilés Paredes.  Mem. & Order at 24-25.  This finding was based on testimony from Luis Rigoberto Correa Garcia stating that Urgilés Paredes came searching for help as Heras Cedeño was being attacked, only to succumb to the same fate later in the night.  *Id.*  This, Judge Merkl found, created a reasonable inference that Urgilés Paredes was killed either to minimize interference with the killing of Heras Cedeño, or to eliminate Urgilés Paredes as a witness.  *Id.*

Taken together, Judge Merkl's careful review of materials and testimony from both parties constituted, at the least, "any evidence warranting the finding that there was a reasonable ground to believe the accused guilty."

B.    **Prison Conditions and Non-Inquiry**

Leon argues separately that the significant violence and gang activity in Ecuadorian prisons warrant a departure from the non-inquiry doctrine.  Pet'r's Br. 19-23.  The non-inquiry doctrine generally prevents an extradition magistrate "from examining the requesting country's criminal justice system or taking into account the possibility that the extraditee will be mistreated if returned."  *In re Extradition of Sandhu*, 886 F. Supp. 318, 321 (S.D.N.Y. 1993).   Leon, however, points to a theoretical exception posited in *Gallina v. Fraser*, that there could be "situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the principle."  278 F.2d 77, 79 (2d Cir. 1960).

In addition, Leon lays out compelling and troubling evidence regarding the state of the Ecuador prison system.  As he points out, the United States Department of State has found "[s]ignificant human rights issues [in Ecuador] include[ing] credible reports of . . . life-threatening prison conditions," "reports that police officers and prison guards tortured and abused suspects and prisoners," and "escalating gang violence, official corruption, food shortages, gross overcrowding, harassment by security guards against prisoners and visitors, physical and sexual abuse, and inadequate sanitary conditions

9

and medical care." Pet'r's Br. at 24; Mot. for Bond, Ex. 2, *United States v. Leon Heras*, No. 22-MJ-271 at 1, 3-4 (E.D.N.Y. May 17, 2022), ECF. No. 8-2. He further urges that prison riots have recently led to a high death toll among Ecuadorian prisoners, and that Leon's status as an American citizen would likely mark him out as a target for such violence. *Id.*

Although the Court is not insensitive to these disquieting issues, such humanitarian concerns are generally within the province of the Secretary of State. *See, e.g. Ahmad v. Wigen*, 910 F.2d 1063, 1066-67 (2d Cir. 1990) ("It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds."); *Sindona v. Grant*, 619 F.2d 167, 174 (2d Cir. 1980) ([T]he degree of risk to [the petitioner's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch.") Indeed, the *Gallina* court's posited exception to non-inquiry has never been applied to prevent federal certification of extradition. *Hoxha v. Levi*, 465 F.3d 554, 564 n.14 (3d Cir. 2006)("[N]o federal court has applied [the *Gallina* exception] to grant habeas relief in an extradition case."); *In re Extradition of Sandhu*, 886 F. Supp. at 322 ("The '*Gallina* exception' to the rule of non-inquiry has yet to be applied."). The Court therefore declines to invoke the exception here and leaves

Leon's humanitarian concerns to the careful consideration of the Secretary of State.

### V.    Conclusion

For the foregoing reasons, Leon's petition for a writ of habeas corpus is denied.

SO ORDERED.


      /s/ Eric Komitee
ERIC KOMITEE
United States District Judge


Dated:    December, 6, 2023
          Brooklyn, New York